IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCUS D.,[1]

      Plaintiff,

  v.                                                                                   Civ. No. 21-1168 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts, among other things, that the ALJ failed to consider properly his need to intermittently use a cane, and failed to consider the falls Plaintiff experiences when he is not using the cane. The Court agrees that the ALJ did not discuss all of the significantly probative evidence related to Plaintiff's risk of falls when not using a cane. As a result, the Court GRANTS Plaintiff's Motion To Reverse And Remand, With Supporting Memorandum, Doc. 26, and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Doc. 23. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

# APPLICABLE LAW

A.  Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

Plaintiff argues the ALJ erred at step four by failing to consider all the relevant evidence. The Court agrees that the ALJ did not discuss or otherwise demonstrate that she considered all the relevant objective medical evidence supporting Plaintiff's allegation that he requires a cane to safely ambulate.

A.   Legal Standard

The regulations require the ALJ to consider all evidence in the case record when she determines whether the claimant is disabled. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). Accordingly, the court may reverse the ALJ if the decision is not based on a fair consideration of all the relevant evidence. *E.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (court may reverse where the ALJ's decision is "overwhelmed by other evidence in the record"); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evidence).

B.   ALJ's decision

The ALJ summarized Plaintiff's testimony that his doctors advised him to use a cane and that he does so "pretty much every time he goes out the door." AR 21. Inside the house, he holds on to walls and countertops and uses the cane even when just standing. *Id.* He started using a

cane around 2015 due to pain in his back and going down his legs, causing him to lose balance and fall. *Id.* Plaintiff's fiancée and paid home health provider since 2015 testified that his legs are weak and he falls often. *Id.*

The ALJ discounted this testimony, finding that "[m]edical records document intermittent use of a cane, but do not establish that use of a cane is medically necessary." AR 23. The ALJ explained:

> On June 27, 2018, the claimant told NP Sanchez-Gallegos he had an occasional gait problem and used a cane sometimes (C3F/81). Examination showed steady but slow and cautious gait. Justin F. Averna, D.O., reported on December 31, 2019 that the claimant ambulated with a single point cane and had an antalgic gait, but that transfers were smooth, easy, and swift, and claimant was able to heel walk and toe walk without difficulty (C8F/9). Muscle strength was normal and sensation was normal except decreased over the T11 and T12 dermatomes. On February 6, 2020, NP Sanchez-Gallegos reported the claimant was able to squat fully and stand with minimal self-support and to lie supine and sit up from supine with minimal difficulty (C7F/8). Straight leg raising was negative bilaterally. Gait was normal (C7F/9). He was able to perform tandem and heel/toe walk. NP Sanchez-Gallegos noted "chronic severe low back pain" but reported overall exam stable with good mobility and strength of all joints and spine, and "urged walking for 20 to 30 minutes daily" (C7F/11).
>
> At the claimant's initial visit to PCP Christina A. Armijo, CNP, on June 30, 2020, examination showed normal gait and negative straight leg raising (C8F/28). The claimant underwent cervical radiofrequency ablation on December 3, 2020, and subsequently reported 80% relief of symptoms (C10F/20). Most recently, on January 4, 2021, NP Armijo reported limited range of motion of the cervical spine with pain and stiffness; tenderness of the cervicogenic, thoracic, and lumbar spine; normal muscle strength; normal deep tendon reflexes; normal gait; no pain on flexion/extension of the lumbar spine; and negative straight leg raising (C10F/17-18).
>
> . . . .
>
> Overall, the claimant engages in a range of activities that suggests the ability to perform light work as set out in my residual functional capacity finding. The claimant's testimony indicates that he goes to his children's outside events, including his two sons' football games (Testimony). The claimant swims with his young daughter, and takes care of the pool with his caregiver girlfriend (Testimony). The claimant is able to go to the grocery store and drives. . . .

> In sum, the above residual functional capacity assessment is supported by the claimant's longitudinal medical history, including objective medical evidence such as . . . examinations showing normal gait with no mention of assistive device; [and] a treatment record of injections and physical therapy with reported good results . . . .

AR 23, 26-27. With respect to exertional limitations, the ALJ therefore assigned an RFC for

> light work as defined in 20 CFR 416.967(b) except he can occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes, or scaffolds. He must avoid more than occasional exposure to extreme cold. He must completely avoid unprotected heights.

AR 20. That is, there was no limitation in the RFC for using a cane.

The ALJ found at step five that Plaintiff can perform three light-exertional occupations given by the VE for a total of 476,000 jobs in the national economy. AR 28. At the hearing, the claimant's attorney asked the VE to assume an individual "that need[s] to use a cane in the dominant right hand to stand and/or walk," and the VE testified that this limitation could reduce these light-exertional job numbers by 75%. AR 73.

C. Analysis

Plaintiff points to a litany of evidence which he contends the ALJ failed to properly consider. Doc. 26 at 9-12. The Commissioner contends that Plaintiff's arguments "ask the Court to read the medical evidence in the light most favorable to him, while overlooking other significant contrary evidence" and that this approach is contrary to substantial evidence review. Doc. 28 at 8. On the contrary, the Court finds that Plaintiff is making a legal argument related to the ALJ's duty to discuss all significantly probative evidence before making a determination on disability.

Although the ALJ *did* discuss much of the evidence Plaintiff points to, the Court finds that the ALJ did not consider the significant medical evidence supporting Plaintiff's allegation that he falls when he ambulates without a cane; and that the ALJ partially mischaracterized the

evidence in stating that Plaintiff's injections and physical therapy had "good results" justifying the lack of limitation on cane use. Finally, the Court agrees with Plaintiff that the ALJ's reliance on the activities of daily living do not justify the lack of limitation for a cane.

    1.    <u>Falls</u>

The ALJ acknowledged Plaintiff's subjective testimony that he falls if he does not use a cane. AR 21. However, the ALJ's subsequent discussion did not acknowledge the ample support for this allegation in the objective medical evidence of record. Unless otherwise noted, the ALJ did not discuss the following evidence:

- The diagnoses "At risk for falls" and "Impaired mobility" have been recorded in Plaintiff's medical history since at least November 7, 2016. *E.g.*, AR 542.

- February 13, 2018: Progress note from NP Sanchez-Gallegos that Plaintiff was not using his cane and fell down the stairs; he hit his ribs on a bench and hyperextended his right knee. Plaintiff was seen at urgent care and his left knee, ribs and back were x-rayed due to swelling. He was given a shot of Toradol. He was bruised and very sore; his mental wellbeing was down. A knee splint was ordered. AR 545-46.

- June 27, 2018: The ALJ acknowledged of this visit that "the claimant told NP Sanchez-Gallegos he had an occasional gait problem and used a cane sometimes (C3F/81). Examination showed steady but slow and cautious gait." AR 23. The ALJ did not discuss that NP Sanchez-Gallegos also continued to note "pain and instability of right knee" and the "recent fall down stairs," and ordered another x-ray of the knee. AR 518.

- September 17, 2018: Physical therapy notes document that Plaintiff "had one fall" and has a "high fall risk." He had multiple episodes of unsteadiness on the treadmill. AR 485.

- May 6, 2019: D.O. Grady saw Plaintiff after he fell when not using his cane. He sustained a left elbow laceration. At the visit with the doctor, Plaintiff had left elbow pain over the medial epicondyle, as well as left third and fourth digit pain. The doctor remarked: "He has a history of neuropathy which causes falls and is supposed to use a cane which he was not." AR 656.

- May 8, 2019: NP Sanchez-Gallegos noted that Plaintiff went to urgent care "after fall after legs gave out due to weakness." AR 655. She advised Plaintiff to consider a walker. AR 656.

- December 31, 2019: D.O. Averna noted that Plaintiff had a mechanical fall in late May and twisted his back. AR 766. The ALJ did not discuss this, but did note that the doctor observed that "the claimant ambulated with a single point cane and had an antalgic gait, but that transfers were smooth, easy, and swift, and claimant was able to heel walk and toe walk without difficulty." AR 23.

In sum, the ALJ correctly observed that Plaintiff's medical records intermittently document use of a cane, while also sometimes documenting a normal gait. AR 23. However, the ALJ's conclusion that use of a cane was not medically necessary fails to take into account the objective evidence supporting Plaintiff's allegation that when he does not use a cane, he is at risk of falling and that he presented to emergency care during the relevant period with injuries after falling.

### 2. Good results from treatment

The ALJ found that "[t]he claimant undergoes epidural steroid injections or radiofrequency ablations every three to four months with positive benefit, and attends physical therapy." AR 22. The ALJ later similarly concluded that the RFC was supported by "a treatment record of injections and physical therapy with reported good results." AR 27. The ALJ discussed some of the records pertaining to injections and ablations, but not any of the physical therapy notes, nor did the ALJ provide a pinpoint citation to the documentation of "good results" from physical therapy.[4] After examining the evidence of record, the Court finds that the ALJ's discussion does not accurately reflect the record.

The one appointment the ALJ described in depth as related to "good results" from injections or ablations pertained to Plaintiff's neck functioning, not his mobility. The cited record

---

[4] The ALJ should provide pinpoint citations because they are important for Plaintiff to challenge the decision, for the Commissioner to defend it, and for the Court to review it. The Court appreciates that Plaintiff nonetheless included a discussion of the physical therapy evidence in his opening brief.

9

actually contradicts the ALJ's conclusion as it pertains to back pain. That is, the ALJ stated that on June 30, 2020, Plaintiff reported to CNP Armijo that the December 3, 2020 cervical radiofrequency ablation resulted in 80% relief of symptoms. AR 23 (citing C10F/20 [AR 823]). However, this visit documents 80% relief from the treatment for *neck* pain: the record cited by the ALJ documents Plaintiff's report that his neck pain was 2 out of 10 but his *back* pain (a suspected cause of his instability walking, AR 456, 655), which the ALJ did not discuss, was still 7 out of 10. AR 823.

In addition, although the ALJ is correct that the physical therapy notes documented "good progress," the ALJ fails to acknowledge the limited nature of such a finding. On September 17, 2018, the provider recorded that Plaintiff "was able to help son's football team the other day moving the yardage marker, he balanced ok keeping his feet wider"; that his gait was "functional"; and that he had "improved balance and endurance on [the] treadmill." AR 486. While this does document "progress," it stops short of supporting a conclusion that Plaintiff can ambulate safely without a cane. Other remarks in the same note make it clear that the provider still considers Plaintiff at "high risk" for falls. AR 485. The note documents that Plaintiff "[h]ad to stop 6 minute walk test at 4:30 due to back pain"; "requested [a] stabilizer on [the] treadmill"; uses his hands "multiple times to balance on treadmill"; had "multiple episodes [of] unsteadiness"; and that his "[e]ndurance [was] well below age/sex norm." AR 485.

In sum, although the record partially supports the ALJ's discussion, other portions of the discussion are not supported by the record and, in fact, inaccurately portray the record. On remand, the ALJ should fairly consider the portions of the record that support Plaintiff's disability allegations.

3. <u>Activities of daily living</u>

The ALJ found that

> the claimant engages in a range of activities that suggests the ability to perform light work as set out in my residual functional capacity finding. The claimant's testimony indicates that he goes to his children's outside events, including his two sons' football games (Testimony). The claimant swims with his young daughter, and takes care of the pool with his caregiver girlfriend (Testimony). The claimant is able to go to the grocery store and drives.

AR 26. Plaintiff argues: "The list of activities the ALJ cites as consistent with the ability to perform light work is not substantial evidence. A list of activities that a claimant can perform is not by itself sufficient evidence that the claimant can perform substantial gainful activity." Doc. 26 at 12.

Although the Court disagrees with Plaintiff that activities of daily living can never be substantial evidence supporting an RFC for light work, the Court agrees in this specific context that these activities are not substantial evidence supporting the conclusion that Plaintiff does not need a cane. Driving and swimming aren't activities that require a cane to avoid injury from falling. The evidence pertaining to attending football games or walking around the grocery store would be pertinent only if Plaintiff testified he could do these things without a cane.[5]

The Court does not hold that the ALJ erred merely by discussing these activities. However, these activities are not substantial evidence supporting the conclusion that Plaintiff's use of a cane is not medically necessary. Cumulative with the other errors discussed in this opinion, it is on this issue which the Court remands for a rehearing. As discussed above, the VE testified that an individual who had to use a cane could not do the jobs in the numbers found by

---

[5] The transcript of the hearing at which Plaintiff testified about these activities is not in the current record, due to the fact that his applications for Title XIV supplemental security income and Title II disability insurance benefits were not consolidated. AR 15. The Court is thus unable to determine for itself whether this testimony was relevant.

11

the ALJ. The Commissioner does not make a harmless error argument, and so the Court does not consider any such argument.

The Court does not reach Plaintiff's argument pertaining to step five, as it may be affected by the step-four issues upon which the Court remands.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion To Reverse And Remand, With Supporting Memorandum, Doc. 26, is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**